Theodore JEFFRIES, Plaintiff, and the State of Delaware, Department of Health and Social Services, Involuntary Plaintiffs,

v.

KENT COUNTY VOCATIONAL TECH-NICAL SCHOOL DISTRICT BOARD OF EDUCATION and Delaware Technical & Community College, Defendants.

C.A. No. 96C–01–008.

Superior Court of Delaware, Kent County.

Submitted: March 17, 1999.

Decided: June 30, 1999.

Steven Schwartz, Dept. of Justice, Dover, for Plaintiff.

A. Ann Woolfolk, Dept. of Justice, Dover, for Involuntary Plaintiffs.

Vincent A. Bifferato, Bifferato, Bifferato & Gentilotti, Wilmington, for Defendants.

## OPINION

VAUGHN, Resident Judge.

Plaintiff Theodore Jeffries ("Jeffries") filed a personal injury action against defendants Kent County Vocational Technical School District Board of Education ("Vo–Tech") and Delaware Technical and Community College ("DTCC"), seeking damages for injuries which he sustained in a slip and fall incident which occurred in January 1994. Jeffries alleged that one or both defendants owned and/or controlled the parking lot in which he fell, and that negligence on their part caused his injuries. The State of Delaware Department

of Health and Social Services ("DHSS") was added as an involuntary plaintiff for the purpose of binding it to any final judgment because Jeffries' medical bills were paid with public assistance. Jeffries has filed a motion for summary judgment against DHSS to determine the exact amount that DHSS is entitled to be reimbursed on account of its right of subrogation for the medical bills which it paid.

## I.  BACKGROUND

DHSS paid for the medical bills associated with Jeffries' accident through the medicaid program. The total amount of medical bills paid under this state assistance program was $13,301.11. DHSS has a right of subrogation for reimbursement against any money which Jeffries recovers from the defendants for their negligence in causing his injuries;[1] however it has no other interest in the outcome or prosecution of this lawsuit. Jeffries has settled his claim against Vo–Tech for the sum of $70,000.00. Suit against DTCC is still on-going. However, since Jeffries has obtained a settlement from Vo–Tech, DHSS argues that it is now entitled to be reimbursed the full $13,301.11 that it paid for Jeffries' medical expenses. Jeffries does not dispute DHSS's right of subrogation, but argues that he is entitled to deduct one-third from the $13,301.11 claimed, or $4,433.70, representing DHSS's pro rata share of the contingent fee which his attorney is entitled to receive from the entire $70,000.00. DHSS argues that no reduction for attorney fees is permitted because the net recovery obtained by Jeffries, after deduction for his attorney's one-third, still exceeds the $13,301.11, leaving him with available funds to pay the amount in full.

In support of his position, Jeffries argues that DHSS is obligated to bear its pro rata share of his attorney's fee because the recovery was made through his and his attorney's efforts for the benefit of DHSS, rather than by DHSS itself. Jeffries argues that the public assistance subrogation statute does not address this issue, and that equity requires that DHSS bear its fair share of any attorney fees incurred in collection of the debt. DHSS argues that the public assistance subrogation statute is clear and unambiguous, that it requires that DHSS be reimbursed in full, and that Jeffries' equity argument therefore has no merit. DHSS further argues that forcing it to pay someone else's attorney's fees would violate the "American rule" which requires parties to pay their own attorney fees, and that it cannot be required to contribute to Jeffries' attorney's fee because of sovereign immunity.

## II.  STANDARD OF REVIEW

■ Summary judgment is appropriate if, after viewing the record in the light most favorable to the non-moving party, the court finds no genuine issue of material fact.[2] If there is a reasonable indication that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law, summary judgment will not be granted.[3] However, a matter should be disposed of by summary judgment whenever an issue of law is involved and a trial is unnecessary.[4]

## III.  DISCUSSION

■ A court should apply a statutory provision so as to effectuate the intent of the legislature.[5] When a statute is ambig-

1.  31 *Del. C.* § 522.

2.  *Guy v. Judicial Nominating Comm'n,* Del.Super., 659 A.2d 777, 780 (1995), *appeal dismissed,* Del.Supr., 670 A.2d 1338 (1995); *Figgs v. Bellevue Holding Co.,* Del.Super., 652 A.2d 1084, 1087 (1994).

3.  *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467, 470 (1962).

4.  *Mitchell v. Wolcott,* Del.Supr., 83 A.2d 759, 761 (1951).

5.  *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,*Del.Supr., 492 A.2d 1242, 1246 (1985).

uous, the court must engage in statutory interpretation in order to determine what the legislature intended.[6] A statute is ambiguous if it is "reasonably susceptible of different conclusions or interpretations".[7]

The subrogation statute in question reads in pertinent part as follows:

(a) Subrogation is defined as the doctrine of law which enables insurers to recover payments from any third party who is responsible for an injury. In any claim for benefits by a recipient who receives medical care under this title, where the recipient has a cause of action against any other person, the Department of Health and Social Services shall be subrogated against (substituted for) the recipient to the extent of any payment made by the Department of Health and Social Services on behalf of the recipient receiving medical care, resulting from the occurrence which constituted the basis for the action against the other person.

(b) After the deduction of applicable attorney fees and litigation costs, any funds received by an individual who has received medical care under this title, the individual's attorney or the individual's guardian or personal representative, by means of judgment, award or settlement of the cause of action, shall be held for the benefit of the Department of Health and Social Services to the extent indicated in subsection (a) of this section.[8]

The issue in this case arises because, after Jeffries deducts his attorney's fee and costs from his Vo–Tech settlement, he still has enough money remaining to pay the DHSS claim in full. DHSS argues that the statute is clear and unambiguous, that it is entitled to recover to the extent of *any* payment made by it as provided in subparagraph (a), from *any* funds received by the recipient, and that the reference to attorney fees and costs in subparagraph (b) simply means that they are subtracted in determining the amount which the recipient has received and therefore has available to apply to its claim. In other words, DHSS argues that, since the amount received by Jeffries after taking into account the one-third contingency fee retained by the attorney and any litigation costs exceeds the $13,301.11 owed DHSS, it is entitled to be paid in full.

While the statute may be susceptible of the reading advanced by DHSS, the Court is not persuaded that it must be read in this manner. The statute does not say in so many words that the recipient's attorney's fee and litigation costs are disregarded in cases where his or her net recovery exceeds the full amount owed DHSS. The position advanced by Jeffries is also reasonable; namely, that since the statute does not expressly address the question of whether any attorney fees and costs should be assessed against DHSS's subrogated claim, the question is not entirely clear, and that it is reasonable to conclude that the drafters of the statute intended that the law of subrogation, including the equitable tenants which it embraces, govern its operation. The Court agrees that the statute is not entirely clear as applied to the facts of this case, making some interpretation of its intended effect necessary.

Subrogation is "the substitution of one person in the place of another with reference to a lawful claim or right."[9] The doctrine of subrogation has its roots in equity and, at common law, equitable principles control its application.[10] For example, equity requires that one who seeks equity must give equity in return .[11] The

6. *Id.*

7. *Id.*

8. 31 *Del. C.* § 522(a) and (b).

9. 73 Am.Jur.2d *Subrogation* § 1 (1974).

10. *Baio v. Commercial Union Ins. Co.,* Del. Supr., 410 A.2d 502, 506 (1979).

11. *Id.*

mere fact that subrogation presents itself in a statute does not necessarily change the common law application of the principle because subrogation is an equitable remedy no matter what form it takes.[12]

■ Although no Delaware court has addressed the issue of attorney fees with regard to the public assistance subrogation statute, this issue has been addressed in the context of the workers' compensation subrogation statute.[13] In that context, a worker who collects an award or settlement from a third party on behalf of an employer is entitled to deduct attorney fees from the recovery.[14] This outcome is based on both the language of the statute[15] and the mandates of equity jurisprudence.[16] The workers' compensation subrogation statute is readily distinguishable from the public assistance subrogation statute because the workers' compensation statute expressly provides that the expenses of recovery may be apportioned between the parties as their interests appear.[17] However, the authorities which have considered the workers' compensation subrogation statute are significant in that they have recognized that subrogation based on a statute remains, nonetheless, an equitable remedy, in the absence of controlling statutory language.[18]

Upon review of the statute involved here, the Court believes that DHSS's emphasis on the phrases "any payment made" and "any funds received" by the recipient accords those phrases an unduly emphasized weight which is out of proportion to their place in the statute. Due consider-

ation must also be given to the express reference to subrogation as the "doctrine of law" which allows insurers to recover from third parties and to DHSS being "substituted for" the recipient. This is the language of traditional subrogation law, and causes the Court to conclude that the drafters of this statute did intend that all of the equitable principles of subrogation be taken into account in interpreting and applying the statute, except where the clear meaning of the statute must prevail. Equitable principles include the apportionment of attorney fees.[19] The phrases cited by DHSS must be read in the context of the statute as a whole.[20]

■ Considering the text of the statute as a whole, including its reference to a deduction for attorney fees and litigation costs, the lack of express language prohibiting the apportionment of attorney fees and litigation costs, and its reference to the law of subrogation, which includes, in the Court's view, the equitable principles embodied in that doctrine, I find that in cases such as this, where the recipient's total recovery exceeds the benefits paid by DHSS, the legislature intended an apportionment of reasonable attorney fees and litigation costs between the State and the claimant. In other words, the phrases "any payment made" and "any funds received" in subparagraphs (a) and (b), respectively, when read in conjunction with the remaining text of the statute, are intended to indicate that the funds held for the benefit of DHSS are all funds remaining after an adjustment for attorney fees and costs which are fairly attributable to

---

12. *Id.*

13. 19 *Del. C.* § 2363.

14. *Keeler v. Harford Mutual Ins. Co.,* Del. Supr., 672 A.2d 1012, 1016 (1996).

15. The workers' compensation subrogation statute is similar to the welfare subrogation statute in that it requires payment of the subrogation lien only after deduction of the expenses of recovery, which includes reasonable attorney fees. 19 *Del. C.* § 2363(e) and (f).

16. *Keeler,* 672 A.2d at 1016.

17. 19 *Del. C.* § 2363(f).

18. *See Keeler,* 672 A.2d at 1017 ("[i]t is irrelevant that the right of subrogation here is statutory"); *Baio,* 410 A.2d at 506 ("no matter what the form, subrogation is an equitable remedy").

19. *Keeler,* 672 A.2d at 1016.

20. *Coastal Barge Corp.,* 492 A.2d at 1245.

the recovery of the medical expenses paid by the department. In this case, that adjustment is the pro rata portion of the contingency fee. There is "no justification for requiring a private insurer to share in the payment of costs when its insured recovers, but exempting [DHSS] from having to share in the payment of costs when a recipient of medical assistance is successful in recovering from a third-party tortfeasor."[21] Therefore, in the present matter, one-third of $13,301.11 must be deducted from DHSS's claim, leaving $8,867.41 as the amount which it should recover.

The result reached here is consistent with the findings of courts in other states which have public assistance statutes grounded in the law of subrogation as opposed to a lien theory. Although the factual circumstances and statutory language vary among the states, the courts have generally held that equitable principles apply to state public assistance subrogation statutes, and attorney fees and costs are generally deducted from the state agency's recovery.[22] Those states which deny attorney fees and costs often have express statutory language to that effect.[23]

DHSS also argues that requiring it to pay Jeffries' attorney's fee would violate the doctrine of sovereign immunity. However, the State waives all claims to sovereign immunity whenever a statute grants it the right to sue and be sued.[24] The present statute gives DHSS the right to become a voluntary litigant and proceed on its own against a third party to recoup its losses. In such a scenario, DHSS would be a party plaintiff and would be required to incur costs and fees like any other litigant. Therefore, requiring DHSS to pay its equitable share of attorney fees under the medicaid subrogation statute does not violate sovereign immunity.

Finally, DHSS argues that requiring it to pay attorney fees violates the American rule, which stands for the proposition that a party must pay its own attorney's fee. However, because this Court has found that the public assistance subrogation statute requires that DHSS pay its fair share of attorney fees and costs associated with the collection of the subrogated amount, this argument has no merit.

---

**21.** *Anderson v. Wood,* 204 W.Va. 558, 514 S.E.2d 408, 413 (1999).

**22.** *See e.g. Anderson v. Wood,* 204 W.Va. 558, 514 S.E.2d 408 (1999); *Kahrs v. Sanchez,* Ct.App., 125 N.M. 1, 956 P.2d 132 (1997), *cert. denied,* Supr., 124 N.M. 589, 953 P.2d 1087 (1998); *Davis v. Idaho Dept. of Health and Welfare,* Ct.App., 130 Idaho 469, 943 P.2d 59 (1997); *Hill v. Iowa,* Iowa Supr., 493 N.W.2d 803 (1992); *Underwood v. Dept. of Health and Rehabilitative Servs.,* Fla. Dist. Ct. App., 551 So.2d 522 (1989), *review denied,* Fla.Supr., 562 So.2d 345 (1990); *Hedgebeth v. Medford,* 74 N.J. 360, 378 A.2d 226 (1977).

**23.** *See e.g. St. Paul Fire & Marine Ins. Co. v. Berdyck,* Ohio Ct.App., C.A. No. OT–98–025, 1999 WL 110633, Handwork, J. (Mar. 5, 1999) (Applicable statute expressly states: "Attorney fees and costs or other expenses in securing the recovery shall not be assessed against any subrogated claims of the departments."); *Lundberg v. Jeep Corp.,* Minn. Ct.

App., 582 N.W.2d 268 (1998) (Applicable statute requires that the state agency be reimbursed for the "full amount of medical assistance paid to or on behalf of the person as a result of the injury"); *Dale v. Gubin,* Mo. Ct.App., 879 S.W.2d 699 (1994) (Applicable statute states: "The department director shall have a right to recover the full amount of payments made"). Other state legislatures have made their desire to allow attorney fees equally clear in the statute. *See e.g. Anderson v. Wood,* 204 W.Va. 558, 514 S.E.2d 408 (1999) (Applicable statute provides that "in the event of full recovery forward to the department the portion of the recovery proceeds less the department's share of attorney's fees and costs expended in the matter.").

**24.** *Dept. of Community Affairs and Economic Dev. v. M. Davis & Sons, Inc.,* Del.Supr., 412 A.2d 939, 943 (1980).

## IV. CONCLUSION

For the foregoing reasons, plaintiff Theodore Jeffries' Motion for Summary Judgment against involuntary plaintiff State of Delaware Department of Health and Social Services is *Granted.*

**IT IS SO ORDERED.**

